Good morning. Just a couple things for the lawyers. We allot 20 minutes aside, 5 minutes extra for rebuttal. You don't need to reserve any time. You will have that 5 minutes for rebuttal. Please keep your voices up. There's a fair number of people here and this microphone does not amplify. It simply records. All right. Would the appellate please step forward? Marie Harrigan Good morning, your honors. My name is Marie Harrigan. Ms. Harrigan, I know you can talk louder than that. Marie Harrigan Yes, well, sometimes I've been told not to. I am the attorney for Mr. Hankton. This morning with the DePaul University Criminal Appeals Clinic, I also advocate on behalf of the appellate defender as well, so my name is familiar. I'm representing Mr. Hankton again today, and I would like to focus my argument today on the second issue that I raised in my brief. Ms. Harrigan Good. Marie Harrigan That the officers... Ms. Harrigan The motion to suppress. Marie Harrigan The motion to suppress issue. Ms. Harrigan Yes. Marie Harrigan Yes. Ms. Harrigan Which I believe is issue one in the state's brief. We have a situation here where the evidence, the evidence first of all at the motion to suppress hearing came from body cam videos and the officer's testimonies. In this case, after the officers pulled over the car, one of the officers, Officer Laika, went up to the driver, asked for the requisite identification, registration. The other officer went and collected the same things from the two passengers in the car. The rear passenger was my client, Mr. Hankton. The occupants of the car were cooperative. They spoke to the officers. Officer Laika engaged the driver in a four to five minute conversation about, I believe, the unfairness of the cost of the city sticker, which was the reason that they were pulled over. They had run the license plate and realized it was registered in Chicago and they did not have the city sticker on their windshield, which is the reason for the traffic stop. About halfway through this conversation, Officer Laika told the driver that he would not be issuing a ticket and that they would be free to leave once Officer Uwola came back from running the identifications back at his car. The officer's testimony indicates that they were actually at that point waiting for backup because based on the smell of burnt cannabis they wanted to search the car. The officer's conversation at the back of the squad car confirms this. Apparently backup did not come. So after about ten minutes... They wanted backup because they were outnumbered, right? There were three people in the car and they felt that they wanted backup. In hindsight, it turns out each one of them had a firearm. But when we're looking at this issue... But the smell of burnt cannabis now under Redmond does not constitute probable cause. And under United States v. Rodriguez, once the mission of the stop is completed, the officers cannot extend it. At that point they were obligated to let them go. Doesn't the smell of burnt cannabis give rise to at least a reasonable, articulable suspicion to inquire further? On its own, it's our contention that it does not. Because these people... There was nothing invisible in the car. There was no indication that these people were violent or uncooperative. They did not appear to be nervous, although the officers testified that they were. Let me just take you to Redmond, where in paragraph 63, Justice Neville says very specifically, the detection of the strong odor of burnt cannabis coming from the vehicle certainly established reasonable suspicion. So I think they made quite clear in Redmond that even though it doesn't give rise to probable cause, it does give rise to reasonable suspicion. We aren't simply splitting hairs here, all over the place. I mean the Supreme Court has confused us all with these split hairs. But that does seem to be a hair that he has split and said yes, it does give rise to reasonable suspicion. But in this case, rather than do we confront the people with the fact that they smell cannabis right away or investigate further at that point, the officers completed the original mission of the traffic stop, which is in violation of the United States v. Rodriguez. And this is solely based on this smell of burnt cannabis, which the officers at the time believed gave them actually probable cause, which is one of them. One of them did testify to that. Because that was before Redmond and it was unclear whether it did or didn't give rise to probable cause. And even the judge characterized this as buying time. And again, if you look to the facts of Rodriguez, this type of buying time just to investigate further is not allowed. So the officer testified, he testified as to an odor of cannabis, or did he say it was burnt cannabis? He testified to burnt cannabis, yes. Does the police report just say that? The police report says nothing about it. And they don't indicate that, you know, the occupants were smoking cigarettes, but there was no testimony or anything that they smelled like it was active burning cannabis or anything like that. It was clearly cigarette smoke by all accounts. But it turns out there was raw cannabis, right? Eventually, yes. After the officers extended the stop, passed the mission of the stop, in order to inquire and ask further questions, the driver did produce a bag of cannabis not packaged properly as far as the legal requirements at that point. But our contention is we don't even have to get that far. When the officers had smelled the smell of burnt cannabis and completed the mission of the stop, the car should have been, they should have let the driver go. What is your position about once the driver handed over the raw cannabis, does that give rise to probable cause in your view? There really isn't any. I mean, the cases that talk about when something's in plain view or when, and obviously this person produced this bag of raw cannabis, you know, our argument doesn't really speak to that. But I think we are focused. It felt to me, and tell me if I'm wrong, you had two arguments. One is it was elongated, unconstitutionally elongated. Correct. Before you even got to the handing over the drugs.  And then the second is once you handed over the drugs, you still didn't have probable cause. That's a secondary argument? The judge, the officer did say at that point he was only going to get a ticket for that, but he did have to check. I think the big focus of the argument is that when you read, especially with the Illinois Supreme Court decision in Redmond, which was not available to us at the time the briefs were filed, the smell of burned cannabis, which the officers felt gave them probable cause, they just wanted backup to have support there. And because of that, they extended this stop. The way that Rodriguez and Redmond can be read together in this case, in our view, we advocate that this motion should have been allowed. Can you help me with the timeline? So as I understand it, you see the car without the city street. They run a check. They decide to pull it over. I guess my question is at what point in time do we know from the record at exactly what point in time the officer all of a sudden smells cannabis? No, because you can watch the body cam video. I mean, you can't tell physically. I mean, you do see when after about this five-minute conversation, if you watch the video, the officer who's talking to the driver walks back to talk to the other officer, and they mouth something to each other. But you can't hear it. Your argument, does it depend upon the observation of the odor of cannabis being made at some later time during the stop? No, because they testified that they smelled burnt cannabis right away, despite the fact that it wasn't in the police report. But that, again, is not enough. So what they did is they extended the stop based on the smell of burnt cannabis, which in their mind they gave an improbable cause. They probably would have searched right then, except that they felt that they needed more officers there. And then that would have been completely improper under Redmond. Because there was nothing else in the totality of circumstances here. And, again, there was sort of an elongated conversation. It wasn't a half an hour, but it didn't happen like the state seems to characterize in this brief. He confronted him with the smell of burnt cannabis, and right after he talked to the officer in there, they produced the fact. It was not an immediate, the time frame is longer than that. They had a friendly conversation. The other officer was calling for backup and probably running the IDs as well. But the driver was told that we're done with you, and you'll be able to leave. In your view of the scenario, there are two things that give rise to reasonable suspicion. The city sticker and the smell of burnt cannabis. Both of those would give rise to... We don't contest the little traffic stop. He didn't have a city sticker, so on his face, they could pull them over. Okay, so that's a Terry stop.  And then once you do pull them over, you smell burnt cannabis, which is another basis. So you have these two bases for a Terry stop. But I don't think that the smell of burnt cannabis doesn't have anything to do with the traffic light. Oh, that's for sure. So you have two separate reasonable suspicions. Right. At that point, it was more than a reasonable suspicion. They could have written him a ticket right then, because they had the registration for the car, which belonged to the driver, in Chicago, with no city sticker. It's just that the state's brief characterizes this very routinely as a routine traffic stop that then turns into a drug investigation because of this odor of cannabis. But again, with the smell of burnt cannabis, now that we have read in the... when we had the appellate court cases that agreed with us when I filed the brief, that the smell of burnt cannabis isn't enough. And then they... It's not enough to make an arrest, but they then make an inquiry, and they produce cannabis. But they didn't make an inquiry, and they... What they did was they completed the mission of their stop. You have to read this in conjunction with Rodriguez and extending the stop in order to get more officers, figure out what... You know, they were done with this stop, and all they had at this point was burnt cannabis. It was different than an ordinary... like a DUI stop. You pull somebody over for bad driving, a traffic violation, and in the course of that Terry stop, the officer observes an odor of alcohol or some indication, maybe open alcohol in the vehicle, or makes an inquiry on the person that admits to drinking or produces open alcohol in the vehicle. That happens all the time. That's... But the difference here is that the mission of the original stop was completed, except that a new mission emerges because of the smell. But the smell was apparent at the get-go, according to the officer's testimony. It was not to stop the car once they come up to the car. I mean, yes, one quickly follows the other, but they are two separate missions, arguably giving rise to two separate reasonable stops. Well, they wouldn't have... I mean, if they didn't make the traffic stop, they wouldn't have been able to... I mean, they are, I guess, connected in that sense, that they didn't pull them over for something that was a traffic stop, which, you know... But again, I do think that the difference in this case... And each case is its own factual scenario, obviously. It's not directly on point with any of the cases. But they were done with them, and if the only thing they had... Well, were they really done with them? They told them that they were done with them for their own safety and not wanting to make them more nervous, not wanting to cause them to flee. But they were. That's why we're here. They were nervous. They didn't act like they were going to flee. When the officer walked back, they didn't take off. I mean, they were cooperating with the officers, the driver and the conversation on the other side of the car. You know, I mean, the facts are what they are. I believe that under both... You have to look at both Rodriguez and Redmond to, by time, to extend the mission of this stop was improper in this case. If your honors have no further questions, I would just request for the reasons I've set forth that his conviction be reversed. Thank you. Thank you.  May it please the Court, I'm Sue Wong here on behalf of the people. I think you can talk louder also. I'll try. That's not going to help you. I just won't try. I'll project. During the course of inquiring into a city sticker violation, officers developed a reasonable, articulable suspicion about possible vehicle code violations, thus warranting further investigation. Now, under Redmond, which came out after briefing here, our Supreme Court said the totality of circumstances, including the strong odor of burnt cannabis, is certainly a reason to investigate. And here, there was a... What's critical is the encounter that the officers had with both the driver and the passenger at the initial stop when they approached the car. The driver and the backseat passenger, who's the defendant, rolled down their windows. And at that time, Officer Leica testified. It's at the record at page 77. The officer testified, I immediately observed smoke blowing from inside of the cabin of the vehicle, and I noticed at that time a strong odor of burnt cannabis. And at that point, under Redmond, the officer certainly had a reasonable suspicion to investigate the possibility that there was a violation of the vehicle code. Well, they probably thought they had probably caused, because they didn't know what Redmond was going to decide. So they probably thought... Sure, sure. So I don't think they were thinking about what container the marijuana was in at that moment, I guess. However, the officers did testify that they were aware of the container requirements, as well as the requirement that the driver cannot use cannabis within some period of time, you know, while operating a vehicle on the highway. Now, the strong odor of burnt cannabis, you know, at this initial encounter, it persisted despite the cigarette smoking. So this isn't a stale odor, you know, of burnt cannabis. This is a strong odor of cannabis. How does burnt cannabis, how does it differ from raw cannabis in terms of odor? Well, when it comes to the difference between that, you know, given the current state of the jurisprudence now, you know, I'm referring specifically to Molina, which distinguishes between raw odor versus... Well, I guess I'd move to sheltered life. It's a factual question, so I guess it's maybe... You know it, but you see it. Precisely. And just as if you walk into a hotel room that allowed smoking, you can tell the difference between stale cigarette smoke and fresh cigarette smoke. Likely, you know, the strong odor of burnt cannabis, you know, may be at least compared and contrasted with stale smoke. The suggestion being that the pervasive odor, the strong odor of burnt cannabis in a car with closed windows, this car had, you know, the windows were up at the time. So that strong odor is difficult to explain absent recent possession and use of raw cannabis. You had to have something to smoke. How is it all using Molina figures into this analysis in this case? Molina just refers, you know, from my reading of the opinion, it makes a distinction between what inferences arise from a law enforcement officer's detection of burnt cannabis versus raw cannabis. Now, in the situation of raw cannabis, Molina suggests that it's more certain when an officer smells raw cannabis that there is a very clear inference that it is being, that it is present and that it is also improperly stored. Now, our case actually. But isn't that inference all relative? I've had discussions with colleagues previous about, you know, I can smell cannabis in a car driving past. My teenage children, however, say, how can you smell that? You have a sensitive nose. So isn't it relative as to the distinguishing smells that you assert? It is relative. And Molina just makes a, you know, draws a nuance there saying that there's a stronger inference when it comes to the odor of raw cannabis, such that because the implication is more certain. There's a more likelihood that it suggests the existence of the raw cannabis being in a, you know, odor, you know, not in a proper container. Yeah. Can you just help me with the motor vehicle law and how it overlays with cannabis? You can't use cannabis. You can't smoke cannabis in a car.  If it's not on the highway? You can smoke it, can't you, if you're not driving? If you're not driving. My understanding is that the driver cannot consume cannabis, you know, within however time prior as well as during. Can the passengers smoke cannabis? I do not know. And I was curious. I believe, and I would have to look, that the courts will look at whether or not someone can drink alcohol as a passenger. And I don't know how that goes because I haven't done that. Counsel, you also raised an interesting point that you indicated that you're not sure as to how far prior the burnt cannabis has to have been smoked. So in this case, they were smoking cigarettes at the time that they were pulled over, correct? Correct. And he smelled, I would assume, that it's paint because they were smoking cigarettes. The testimony was that it was a strong odor. He could still smell. Still. Okay. But we don't know how far. There's no testimony as to when. We cannot know with any certainty. Correct. We cannot know. Right. Okay. When or who may have smoked the cannabis? Sure. But at the same time, they were all sitting inside a car with closed windows. So whether they, you know, the intoxicating effect, I'm sure, would have some impact on, you know, the driver and the occupants, notwithstanding whether or not anybody actually smoked it. However. We can't make assumptions, Counsel. That's right. However, what happens also during this time when the officers are. . . Really, Matt, they make an observation of an odor of their cannabis. They then make an inquiry, and the driver of the car produces a bag of caffeine, right? Right. So I guess you'd say the mission accomplished. Depends on what the mission is. Well. Okay. Our position is that the officers have a reasonable, articulable suspicion because when you have the defendant, who is the passenger, and the driver roll down windows and there is a cloud of smoke coming out. It's cigarette smoke. Notwithstanding, the odor of burnt cannabis is still pervasive. There's a suggestion that they're trying to hide or mask the odor of the burnt cannabis, whether there had been any consumption of it or not. And notwithstanding an improper container, you still can't consume it in the car. And who? The driver cannot consume. . . And, of course, there's not necessarily any indication of. . . There's no remnants of whatever, but to think otherwise would encourage the driver to consume it before getting pulled over. And the. . . What of Counsel's point that, really, the stop had ended. The officers had indicated to the driver that they were going to be free to go. They were just running a check and that they weren't going to write a ticket for the city sticker violation. All right. Well, so what happened was while Officer Ulloa was running the driver's license and name checks on the passengers in the vehicle, so he's back at his squad car, Officer Laika is at the side of the car that has been pulled over. And he's having a casual conversation with the driver about. . . So it's kind of a pain to have a city sticker. And this is all part of that initial investigation into the sticker violation. And they talk about how it's frustrating. And the driver explains at page 259 in the record that he parks his car in the garage. And that's part of the investigation the officers are going through in asking about the city sticker violation. Now, while that is happening, at that same time, the officer says, By the way, we're not going to issue you a ticket for the city sticker violation. So what I'm suggesting is that this is still ongoing. The initial traffic stop regarding the city sticker violation is still ongoing at the time that the officer says, Hey, by the way, we are not giving you a ticket because. . . Is there an end at that point? Well, there should be. However, you would expect one. But when you read the record, there are no facts regarding whether or not there was a verbal warning, a written warning, or even notice from the officers. By the way, you're free to go. There was no such conversation. And within this five minutes, this whole initial chain or sequence of events is five minutes into the traffic stop. And that's when the officers make a decision to ask for backup to help deal with looking into the odor of cannabis that had been observed at the beginning of the traffic stop. And so there's no facts indicating to the driver or the occupants, Hey, you guys can go. Clearly, there's a gap in those facts. And meanwhile, because the observations that provided the reasonable articulable suspicion that a vehicle code violation was being committed, had been committed, the officers testified as to why they waited until after they resolved the initial city sticker violation to confront the driver about the odor. And, you know, the concern was that it would promote noncompliance as well as maybe cause the driver to flee. And the trial court, in making its findings, credited the officers' testimony in that regard. Are you saying that the continuing the stop after they said we're not going to give you a ticket is justified? Well, articulate for me what you're saying justifies that continuation once we say, once the officers say we're not giving you a ticket for the city sticker. I'm saying it's the same stop. I'm not saying that there's a break. This is a seamless change. What justifies continuing that same stop once you said we're not giving you a city sticker? We're not giving you a ticket? Well, there's no clear sign to anyone that the stop is over. Well, they said we're not giving you a ticket. But that does not mean that the stop is over. What justifies continuing it? Well, because the stop is not over and there were initial observations made, which provided a reasonable, articulable suspicion that something else was going on, the officers, during a valid traffic stop, are within their right to dispel their suspicion. And, in fact, they did by asking questions. And they were questions that started off rather benign. Do you have a medical cannabis card? The second question is, do you have any weed in the car? And this is all within five minutes of this traffic stop. And what does the driver say? Yeah, I smoke weed, and here's this knotted bag of cannabis. And at that point, there's direct evidence of raw cannabis, in fact, that is noncompliant. It has not been stored properly. And I'm sure that the – And you would say that at that point they had probable cause. At that point they had probable cause to search the vehicle to see if there is more contraband. How far, if you know, and it's probably clear from the tape, but how far into the stop is the hand over the bag? How long had they been stopped at that point? Shortly after five minutes. I'm going to ask you a factual question. I'm not sure if you know, but with respect to the initial stop, how did the officers, if the officers are pulling them over from behind, how did they know that there was no city sticker, which is on the front windshield? So according to the testimony, the officers were driving in, you know, they were driving in one direction and the other car was going in the other direction, so they were able to see the windshield and an absence of a city sticker. What they did at that point was not immediately pull over that vehicle. They did a U-turn. They followed the vehicle. And while doing so, they conducted an initial investigation. They ran the license plates. And they determined that that car, you know, was registered, you know, it's registered in the city of Chicago. And in order to further, you know, investigate or dispel whatever suspicions they may have about it, they ultimately pulled the vehicle over. What are the suspicions at that time? At that time, well, beyond there not being a city sticker, you rarely hear of people being pulled over for not having a city sticker. So at that time, you know, there's no indication that the officers could smell the cannabis, you know, at that moment. But the critical encounter is when, you know, the case law talks about the critical encounter is not the, you know, the events that are leading to the actual stop. We're talking, you know, the critical point is when the officers encounter, you know, the driver and its occupants. And that is what I've been talking about where they approach the car and, you know, they tap on the window. The driver and the backseat passenger roll down that window, roll down their windows. And at that point, you know, there's like a cartoon. There's clouds of cigarette smoke that come out. And, you know, at the same time, there's a very pervasive odor of burned cannabis. At that point, the officers had not only a reasonable, articulable suspicion to look into a city sticker violation, the officers also had a reasonable, articulable suspicion to look into that strong odor of burned cannabis, coupled with both of those occupants did appear nervous. And while there are cases that say nervousness could happen, I'm nervous right now. So, I mean, that's not going to hopefully, you know, give anybody the impression that I won't go there. But I think that in this case, what takes us out of the realm of those cases that find nervousness to be, you know, not so impressive is that the officer testifies. This is at the Record of Proceedings, page 91. The driver was nervous during the duration of the stop. So once the driver is being told, hey, don't worry, you know, it's a pain to get the city sticker because you park in the garage. Don't worry, we're not going to give you a ticket. The driver was still nervous after that. And I think that that is something that, you know, goes towards common sense in that. Maybe he's nervous because he doesn't understand if he said we're not going to give you a ticket, we're going to let you go, but yet he isn't free to leave. Certainly. And that raises some suspicion as well. Certainly. And depending on the driver. The case doesn't depend on nervousness, right? Right. It's the owner. It's the totality of the circumstances. You know, the whole is greater than the sum of its parts. And when you look at the parts in the vacuum, yeah, you know, we could do it all day. But when you look at the totality of the circumstances, you know, the whole of what the officers, you know, are seeing and encountering, I think that this shows a seamless and dynamic situation that is supported by a reasonable, articulable suspicion that developed into direct evidence that led to probable cause to search this car. Any questions? I have concerns, but I won't ask questions. So unless the court has any further questions, I don't have anything more. Thank you, counsel. Thank you very much. Thank you, Your Honors. Just a few points, Your Honors. Going to the counsel characterizes the testimony of the officers saying there was this strong smell of cannabis, despite all the cigarette smoke coming out of the window. Well, they didn't put anything about this in their police report. If this was such a pivotal thing that they really wanted to search this car because of that, they didn't even bother to write it down. So all we have is their testimony. Well, the police report is just a summary, right? I mean, they did testify to it. But if this was the entire basis of the reason for being suspicious, the fact that they didn't even put it in their report in our contention is that maybe it wasn't as important, maybe it wasn't as strong. You can smell burnt cannabis. I don't have the study in front of me, but Your Honor was asking about the difference. There have been studies that burnt cannabis is detectable in a car like if it's been smoked in a long time ago. Now, again, I don't have the studies in front of me, so I'm not trying to make this argument, but it is something that hangs around. Would it be the difference between the smell of a cigarette having been smoked in a car versus a pack of cigarettes sitting in a car? Correct. I mean, I purchased a used car a couple years ago that someone had clearly smoked in, even though they said they detailed it and everything. Those odors linger. So I think that is why Molina is different than Redmond, in that the fresh cannabis has a completely different odor, and I dispute whether if it's in this canister you can't smell it either, but that's a different question. Can you help me with this, just with this purely legal question? Can a passenger in a motor vehicle smoke cannabis? I also do not know the answer to that question. I also think it's a lot more difficult, even with a driver, because there aren't the same type of tests, say, you have for DUI. Like when it's alcohol, you can do the blood alcohol test. I mean, there isn't much you can test. You don't know when someone has actually smoked cannabis. Your hair could smell like it, and you could have smoked it yesterday. So, I mean, it's a little bit more, there's more wiggle room with these laws, which is why I think we're getting these decisions that split hairs, because you're uncharacterized. I also, the nervousness, you know, that was their testimony. You watch that video, there is no indication of nervousness on behalf of that driver. He was conversing with the officer about the unfairness of city stickers, and the officer was talking about suburbs versus the city. I don't detect nervousness from the get-go. Maybe some people are just nervous by name. I mean, you said nervous, but I didn't see any outward manifestations of nervousness. Like co-counsel, I'm my opposing counsel, I'm nervous here too, so I don't know if it's detectable. We're not going to arrest either one of you, we promise. I just don't know what inference can be drawn from it. It's not a crime to be nervous. No, and I would imagine most people being pulled over for anything. Of course. Even if there's nothing in their car. So, but I don't think that should even be a consideration. The smoke going through the vehicle was clearly cigarette smoke. They did not testify it was marijuana smoke. They had cigarettes in their hands. So that really does not go into this reasonable suspicion or probable cause of termination. If you're honest, I have no other questions. And then, of course, the search of the car doesn't reveal any indications. There's no drugs at all. That it had been smoked. No, there's no ash, there's no nothing. Thank you. Thank you. Thank you both. This is, you know, clearly a new and emerging question. And thank you both for your contributions to our understanding of it. And we will take this under advisement and you will hear from us shortly.